# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 5222 | **DATE** | 11/3/2004 |
| **CASE TITLE** | Bradley Hoffman, et al vs. Hercules Chemical Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| ✓ | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

WAP     courtroom deputy's initials

number of notices

NOV 0 4 2004
date docketed

GNA
docketing deputy initials

date mailed notice

mailing deputy initials

Document Number

28

U.S. DISTRICT COURT CLERK

2004 NOV -4 AM 8: 05

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

BRADLEY HOFFMAN and INGRID
HOFFMAN,

          Plaintiffs,

      v.

HERCULES CHEMICAL COMPANY,
INC.,

          Defendant.

NOV 3 2004

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

Case No. 03 C 5222

Hon. Harry D. Leinenweber



## MEMORANDUM OPINION AND ORDER

Bradley Hoffman (hereinafter, the "Plaintiff") and his wife Ingrid Hoffman bring this product liability action for personal injuries that Plaintiff allegedly sustained from inhaling toxic fumes or vapors emitted by a product known as Clobber, a drain cleaner manufactured by Defendant Hercules Chemical Company. Plaintiff seeks damages for the injury, and Mrs. Hoffman seeks damages for loss of consortium. Specifically, Plaintiff contends that Defendant failed to warn properly consumers of various unreasonably dangerous conditions of Clobber, and that Clobber has a design defect that makes it unreasonably dangerous. Before the Court is the Defendant's Motion for Summary Judgment. For the following reasons, Defendant's Motion is **GRANTED**.

### I. INTRODUCTION

Plaintiff worked full time as a plumber for approximately 18 years. (Hoffman Tr. 7-8, 13-14). On May 17, the Plaintiff

responded to a call for service of a clogged kitchen drain in Libertyville, Illinois. He determined that the clog was in the pipes going through the basement and rodded the line through a clean-out drain in the basement. Rodding is done by a machine that spins in the line, removing the material that had blocked the flow. *See id.* at 21, 77-78. After Plaintiff rodded the line, it was no longer clogged but was still "sluggish" because grease remained in the line. *See id.* at 55-56, 63-64. He then decided to use Clobber to remove the remainder of the grease from the line. Clobber is a chemical drain cleaner that contains sulfuric acid. Plaintiff had previously used Clobber on numerous occasions without incident. *See id.* at 52-54, 101.

Drains are sometimes clogged where the clog cannot be reached by rodders or similar mechanical equipment; only chemical drain cleaners can open those clogs. (Siegal Aff. ¶ 7). Sulfuric acid is effective against a broader range of potentially clogging substances than other chemicals used in drain cleaners. *See id.* ¶ 8. Sulfuric acid is also desirable for use in a chemical drain cleaner because it is denser than water and therefore able to sink through the backed up contents of a clogged drain and reach the clog. *See id.*

Upon deciding to use Clobber for the remaining grease, Plaintiff left the residence and went to National Plumbing Supply in Libertyville, where he purchased a half gallon of Clobber and

then returned to the house. (Hoffman Tr. 64). The Clobber Plaintiff purchased was contained in a plastic jug, and packaged inside a plastic bag closed by a red clip at the top. *See id.* at 83. As shipped, the Clobber package that Plaintiff identified included a tag affixed to the clip that closed the plastic bag. (Siegal Aff. ¶ 4). Although Plaintiff does not recall the presence of this tag on his bottle of Clobber, (Hoffman Tr. 84), such a tag was recovered from the scene by the Libertyville Fire Department on May 17, 2001. (Def. SOF ¶ 11, n. 6). The tag contained the following warning, printed in red on both sides: "[diagram of skull and crossbones] DANGER [diagram of skull and crossbones]…INHALING VAPORS OR MIST MAY CAUSE PERMANENT LUNG DAMAGE." (Exhibit C).

The bottle itself bore a label with various warnings. Plaintiff testified that he read the entire label before using the product on May 17, 2001 and that he could understand what it said. (Hoffman Tr. 89-90). The front of the Clobber bottle, right below the product name, prominently instructs that the product can be used to "melt grease" and "disintegrate organic matter." (Exhibit C). The label on the jug also contained a panel with the legend, "DANGER [diagram of skull and crossbones] POISON," that stated, "Contains concentrated sulfuric acid," and an adjacent panel with the following instruction (which is found on the last line of the bottom of the side label):

Clobber® is for emergency use by PROFESSIONALS to open clogged lines. For sluggish drains, grease traps, septic tanks, cesspools, and odor problems, use Hercules WHAM®.

(Exhibit C).

Conversely, WHAM is a non-corrosive, non-caustic, and non-acidic product that dissolves grease in sluggish lines with substantially less risk of injury than that involved in using Clobber. (Siegal Aff. ¶ 6).

Plaintiff understood the importance of reading and following the directions on the label. (Hoffman Tr. 54-55). Plaintiff testified it was his practice to always read "the whole bottle" before using any chemical. See id. at 55. Plaintiff knew that Clobber contained sulfuric acid and knew that it was dangerous and should be used "very carefully." The label instructed users to "[p]ut on acid-resistant gloves and goggles or face shield" and elsewhere said to "[w]ear heavy acid-resistant gloves and goggles or face shield when handling." (Def. SOF ¶ 18; Exhibit C). When Plaintiff used Clobber on May 17, 2001, he was not wearing a face shield and was wearing his regular work clothes, jeans and shirt and possibly rubber gloves. (Hoffman Tr. 68).

The label also instructed users to "Read Entire Label and Hercules Material Safety Data Sheet [the "MSDS"] #16 Before Using." (Hoffman Tr. 91-92, 103). Plaintiff does not recall if he read the MSDS for Clobber on that day or at any time previously. MSDS #16 contained "Section 8-Control Measures" that included subsection

"Respiratory Protection" that specified "self-contained breathing apparatus or mask with canister for sulfur dioxide." (Siegal Aff.; Exhibit F). Plaintiff used Clobber on May 17, 2001 without a breathing apparatus. (Compl. ¶ 9e). Moreover, the label contained the following warnings and directions:

> Contains Concentrated Sulfuric Acid . . . DANGER . . . INHALING VAPORS OR MIST MAY CAUSE PERMANENT LUNG DAMAGE . . . Provide sufficient ventilation to prevent building and inhalation of vapors or mist.

> (Exhibit C).

Contrary to the instructions on the label, the clean-out drain into which Plaintiff poured the Clobber was in a basement that had no outside door, closed windows that he did not recall trying to open, and no fan. (Hoffman Tr. 67-68).

The label also included various instructions regarding the pouring of Clobber down a drain. It advised users to "[s]lowly pour a small amount of Clobber (less than ¼ pint) DIRECTLY INTO DRAIN OPENING. Keep hands and face away from opening . . . If no 'bubbling' or backup occurs, add rest of dosage slowly and carefully." (Exhibit C). It is unclear from the record whether Plaintiff poured only half the bottle or the entire bottle into the drain, but it is clear that he used at least two times the recommended initial amount. (Def. SOF ¶ 24; Hoffman Tr. 68-69, 82-83). The label instructs users, after pouring Clobber into a drain to "immediately place inverted dishpan, bucket, or other deep container over drain opening to protect against possible eruption

- 5 -

of drain contents and acid." (Exhibit C). Plaintiff had with him only the pipe rodding machine, a drop cloth, a Sawzall that he had used to replace a section of pipe and "could have" had a bucket underneath the drain containing the grease he had removed. (Hoffman Tr. 70). He started seeing "stars and dots" one to four minutes after pouring at least half of the Clobber into the drain. *See id.*

The label additionally warns, "Do NOT use Clobber® where other drain chemicals, hot water, or bleach are present." (Exhibit C). However, there were no specific warnings provided with the product that fumes produced from a combination of sulfuric acid and bleach, when inhaled, can cause brain damage. (Siegal Tr. 22-23). Before using Clobber, the Plaintiff asked the occupant of the home whether she had used any drain cleaning chemicals. Even though he knew that laundry appliances in the basement emptied into the drain into which he poured the Clobber, (Hoffman Tr. 65), Plaintiff did not ask whether bleach had been used recently and later admitted that he "never thought of bleach at the time." (Hoffman Tr. 77-78). Many household laundry bleaches consist of a solution of sodium hypochlorite in water; when sodium hypochlorite comes into contact with acid, a violent chemical reaction occurs in which a chlorine is released. (Scholer Dep. 28-29).

After seeing the "stars and dots," Plaintiff recalls going upstairs, lying on the concrete outside the house, re-entering the

house and falling on the floor, nauseated. (Hoffman Tr. 70-72).
The elderly woman who resided there told him he had fallen down the
steps outside the house. (Hoffman Tr. 72). She was the only
person present at 1345 Country Court on May 17, 2001 while
Plaintiff was working, and she is since deceased. (Pl. Ans. to 1st
Inter. ¶ 5(a)). Plaintiff was transported to a local hospital,
where he was found to have sustained a skull fracture among other
injuries. (Hoffman Tr. 24). Plaintiff also suffered a subdural
hematoma in his brain that required immediate surgery. He suffered
from severe dizziness, vomiting, upper back pain and headache and
lightheadedness. He had severe swelling, redness, and injury to
his eyes and eyelids. (EMS Patient Care Report). Plaintiff or
someone authorized to speak for him advised Dr. Grobman that
Plaintiff fell on the concrete steps as a result of exposure to
fumes from a combination of chlorine bleach and drain cleaner.
(Pl. Resp. 1st Adm. ¶¶ 5, 6).

## II. **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact
is "material" if it could affect the outcome of the suit under the
governing law; a dispute is "genuine" where the evidence is such

- 7 -

that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmovant. Miller v. Am. Family Mut. Ins. Co., 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990); Schroeder v. Lufthansa German Airlines, 875 F.2d 613, 620 (7th Cir. 1989). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### III. **DISCUSSION**

A product may be unreasonably dangerous if there is a design defect with the product or if there is a failure to warn adequately of a danger posed by the product to which the average consumer would not be aware. See McColgan v. Environmental Control Systems, 212 Ill. App.3d 696, 699 (1st Dist. 1991). Counts I and III of

Plaintiff's Complaint allege that Defendant failed to warn adequately and assert liability on the theory of strict liability and negligence; Counts II and IV adopt the reasoning of Counts I and III and assert liability for Mrs. Hoffman's loss of consortium. Counts V and VII allege that Clobber was defectively designed; Counts VI and VIII adopt the same allegations and assert liability for Mrs. Hoffman's loss of consortium. Before the Court is Defendant's Motion for Summary Judgment on all eight counts of Plaintiff's Complaint.

## A. Inadequate Warnings Claims

Defendant argues that the warnings contained on both the Clobber container and the MSDS accompanying the product were adequate as a matter of law. The Complaint alleged inadequacies in the warnings and instructions under both negligence and strict liability theories. The only difference between the two counts is that fault is an additional element of a negligence claim. See Werckenthein v. Bucher Petra Chemical Co., 248 Ill. App.3d 282, 289-90 (1st Dist. 1993). Specifically, the Complaint alleges that Defendant failed (1) to use warnings that procure the attention of consumers; (2) to warn of the danger of accidental inhalation; (3) to warn how to use the product to avoid accidental inhalation; (4) to instruct to use a breathing apparatus; and (5) to warn of the potential for brain injury if accidentally inhaled.

Defendant contends that the fact that Plaintiff read and understood the entire label demonstrate that the label did in fact procure his attention. Further, Defendant claims that the label did, in fact, warn of the danger of inhaling vapors. Both the label on the bottle of Clobber and the red tag affixed to its packaging warned that "INHALING VAPORS OR MIST MAY CAUSE PERMANENT LUNG DAMAGE." It also instructed users to "provide sufficient ventilation." Defendant additionally notes that although the label did not define "sufficient ventilation," the term, at the very least, would not mean "do absolutely nothing" as Plaintiff did, failing even to crack a window in his basement work location.

In addition to the tag on the package and the label on the bottle itself, OSHA requires that a MSDS be distributed along with each bottle of Clobber sold. The MSDS is a cornerstone of OSHA standards intended to address comprehensively the issue of communicating to workers information concerning potential hazards of chemicals in the workplace and appropriate protective measures, and to preempt state law on that subject. 29 C.F.R. § 1910.1200(a)(2). The regulation requires manufacturers of hazardous chemicals to develop a material safety data sheet for each hazardous chemical product and specifies the information that such a document must contain. 29 C.F.R. § 1910.1200(g). The Clobber MSDS did, in fact, refer to a "self-contained breathing

apparatus or mask with canister for sulfur dioxide" in a subsection entitled "Respiratory Protection."

Finally, Defendant insists that they were not required to warn specifically of the danger of brain damage. Defendant argues that the warnings were sufficient to alert Plaintiff to the danger of inhaling fumes from this product, even without threatening the precise type of injury he suffered. See Wagner v. Harley-Davidson, Inc., 1995 WL 530658 *3-4 (N.D. Ill. 1995)(specific reference to possible genital injury not required when warning of motorcycle collision).

Defendant also contends that Plaintiff's failure to follow numerous directions precludes recovery for the injuries he sustained. The Restatement, Torts (Second) § 402A, comment, j (1965) provides that "where warning is given, the seller may reasonably assume that it will be read and heeded . . . " Defendant also cites Hornyak v. National Presto Industries, 1995 WL 239104 *4 (N.D. Ill. 1995)("having been provided with instructions as to the safe operation of the FryDaddy, the plaintiff was injured when he chose to completely disregard both those instructions and his own common sense. In so doing, Hornyak proceeded at his own risk.") Specifically, Plaintiff did not heed the label instruction to use another product called WHAM for "sluggish drains," which was the condition of the drain after Plaintiff rodded it. Plaintiff also failed to determine whether bleach might remain in the line

and failed to provide any ventilation. Essentially, Defendant argues that by disregarding various instructions Plaintiff proceeded at his own risk. Alternately, Defendant contends Plaintiff cannot prove causation because given his disregard of many instructions, it cannot reasonably be inferred that Plaintiff would have followed his own proffered instructions even if they had been included on the label. Summary judgment is appropriate where the undisputed facts show the absence of evidence sufficient to establish causation, which is an essential element of a plaintiff's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Plaintiff argues that the Court should deny Defendant's motion because adequacy of warnings is a jury question and not traditionally subject to summary judgment. Byrne v. SCM Corp., 182 Ill. App.3d 523, 547 (4th Dist. 1989). Analogizing the case at bar to Byrne, Plaintiff argues that issues of fact remain regarding the adequacy of instructions for proper ventilation. In Byrne, summary judgment for defendant was denied in a strict products liability case where a painter alleged inadequate warnings regarding the hazardous effects of inhaling paint while working indoors and failing to apprise the user of proper forms and methods of ventilation. The court noted:

> The question of whether a product is unreasonably dangerous because the warnings are inadequate is a question of fact for the jury. Such warnings may be found to be inadequate if the warnings fail to specify the risk presented by the product, if the warnings are inconsistent with how the product is to be used, if they

> fail to advise of the reason for the warnings, or if the
> warnings do not reach the foreseeable users.

Byrne, 182 Ill. App.3d at 547 (emphasis in original). The court held that the warnings were inadequate as they failed to inform the user of the "precise equipment needed for the user's protection and the product was dangerous regardless of the ventilation in the work area." Id. Plaintiff cites the testimony of two experts who agree that the warnings regarding the dangers of Clobber were inadequate.

Addressing the issue of the duty to warn about the specific danger of brain damage, Plaintiff distinguishes two cases cited by Defendant, Wagner, 1995 WL 530658, and Hornyak, 1995 WL 239104, by noting in those cases that the users knew not only the scope and manner of injury, but also how to guard against it. In other words, the danger of injury from a motorcycle collision or being burned by a deep fryer were both known and understood by the respective plaintiffs. Plaintiff, however, contends he was not apprised of the risk of brain damage or how to protect against it.

While adequacy of warnings is generally a question of fact for a jury, where dispositive facts are undisputed, warnings and instructions can properly be held adequate as a matter of law. Hornyak, 1995 WL 239104 at 3. Moreover, the determination of whether a duty to warn exists is a question of law and not of fact. Schultz v. Hennessy Industries, Inc., 222 Ill. App.3d 532, 541 (1st Dist. 1991). Here, given the undisputed facts of this case, the

Court concludes that granting summary judgment for the Defendant is appropriate.

Here, the label clearly procured the attention of consumers. In fact, not only did the label procure Plaintiff's attention, but it also contained attention grabbing fonts and symbols, like diagrams of skulls and crossbones as well as large text reading "DANGER POISON."

Case law has established that a product is not required to list every possible risk associated with its risk. For example, Defendant cites Wagner v. Harley-Davidson, Inc., 1995 WL 530658 (N.D. Ill. 1995), which supports the notion that a product need not warn of every conceivable injury. See also Genaust v. Illinois Power Co., 62 Ill.2d 456, 466 (1976). Here, the label specifically warned of the danger of accidental inhalation. While it is true that the label did not cite brain damage as a possible effect, it did contain warnings of permanent lung damage and death. Thus, Defendant warned of numerous severe injuries that could occur if Clobber directions were not followed, and Plaintiff ignored the warnings. One cannot reasonably infer that an additional line relating to possible brain damage would have made all the difference. The Plaintiff further claims that the labels failed to warn how to avoid accidental inhalation and failed to instruct to use breathing apparatus are also without merit and can be disposed of simultaneously. The MSDS did, in fact, refer to use of a

breathing apparatus, which would be one method of avoiding accidental inhalation. Providing ventilation would also have reduced this risk. Plaintiff did neither.

Defendant's compliance with federal OSHA guidelines is particularly relevant to the adequacy of warnings question. "[E]vidence of a product's compliance with governmental safety standards is relevant and admissible in a product liability case on the issue of whether a defect in the product is unreasonably dangerous." Proctor v. Davis, 275 Ill. App.3d 593, 604 (1st Dist. 1995). In particular, OSHA has detailed requirements for information to be contained in the MSDS for every hazardous chemical, and since none of the facts demonstrate a failure to comply with those requirements, the warnings are adequate as a matter of law.

Additionally, a duty to warn is imposed only where the injury suffered by the plaintiff was foreseeable by the defendant. Schultz, 222 Ill. App.3d at 541. Foreseeability is established by a determination of what is "objectively reasonable" to expect, not merely what might conceivably occur. Id. Thus, an injury is foreseeable it if is "objectively reasonable" to expect the user of the product to be injured in the manner in which the plaintiff was injured. Id. None of the facts here indicated that Defendant knew Clobber could cause brain damage, nor did they suggest that such a warning would have altered Plaintiff's actions in any way.

For the foregoing reasons, the Court grants summary judgment in favor of the Defendant on Counts I, II, III, and IV, relating to the alleged inadequacies of warnings.

## B. Defective Design Claims

Defendant has also moved for summary judgment on all counts relating to defective design. In essence, Plaintiff claims that the use of sulfuric acid in Clobber (1) created an unreasonably dangerous condition that would not be contemplated by an "ordinary professional consumer"; (2) caused the product to fail to perform as safely as an "ordinary professional consumer" would expect when used in a reasonably foreseeable manner; and (3) created an unreasonably dangerous condition that outweighs the benefits of the product.

Two tests have been generally endorsed for determining liability for defective product design, the first of which is called the "consumer contemplation test." This test asks whether the product was dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Haddix v. Playtex Family Products Corp., 138 F.3d 681, 683 (7th Cir. 1998). In Haddix, where a plaintiff alleged that the use of synthetic fiber in tampons was an unreasonably dangerous design defect, likely to cause Toxic Shock Syndrome, the Seventh Circuit noted that the danger of using tampons was made

- 16 -

"obvious" by the warnings of the packages of the risk of Toxic Shock Syndrome. Id at 685. Defendant asserts that Haddix is controlling because the many warnings accompanying Clobber alerted Plaintiff to the extent of the product's dangerousness.

Defendant further argues that Clobber did not fail to perform as safely as one would expect when used "in a reasonably foreseeable manner." Defendant again emphasizes that it was entitled to assume that Plaintiff would follow the directions. Taylor v. Gerry's Ridgewood, Inc., 141 Ill. App.3d 780, 785 (3rd Dist. 1986); Restatement, Torts (Second) § 402A, comment, j, supra; Hornyak, 1995 WL 2391. By his own admission, Plaintiff knew that Clobber was dangerous, that is should be used very carefully, and that it was important to read the directions. In other words, Defendant argues that no "ordinary consumer," let alone a professional consumer, would expect that a product known to be dangerous could be used safely without following the directions.

Another test that is useful for determining possible liability for a design defect is the risk-utility test. Defendant initially claims that the test is inapplicable to Clobber, under the rule that claims involving "simple" products, the dangers of which are obvious, do not fall within the scope of the test. Haddix, 138 F.3d at 684, 686. Whether a product is "simple" is a matter of law to be decided by the Court. Id. at 684. Defendant submits that it

is intuitively obvious that a liquid like Clobber is a "simple" product notwithstanding its dangerous nature.

However, even if the risk-utility test were applied, Defendant insists that summary judgment should be entered in its favor. Because certain clogged drains can be opened only with chemical drain cleaners, and sulfuric acid drain cleaner are effective against a broader range of potentially clogging substances than other drain cleaners, sulfuric acid is an essential and irreplaceable component for some circumstances. Moreover, the Consumer Product Safety Commission has found that sulfuric acid drain cleaners are safe for use, even by non-professional, ordinary consumers who follow the manufacturer's directions.

Defendant contends, therefore, that the benefits of using sulfuric acid in drain cleaners clearly outweighs the inherent risks of the product, and that the extensive warnings on the tag and label demonstrate the care Defendant exercised to enable those who used the product to do so safely. Thus, Defendant argues that summary judgment should be granted in its favor for both negligence and strict liability claims of defective design.

Plaintiff asserts that the evidence establishes that Defendant's warnings of dangerousness and its failure to apprise consumers of ways to protect themselves, render Clobber a defective product. Plaintiff also cites the case of Ruggeri v. Minnesota Mining & Manufacturing Co., 63 Ill. App.3d 525 (5th Dist. 1978),

where the defendant, like Defendant here, argued that product was not defective because it was sold to professionals rather than the general public.  Id. at 529.  The court there held that product's professional consumer market did not presuppose knowledge as to dangerousness of the product.  Also, "allowing a user to select the safer of two or more products is not an option available to the defendant.  Rather as a manufacturer, the defendant is under a duty to manufacture a product which is 'reasonably safe.'"  Id.

Plaintiff contends that the evidence, including the affidavits of two experts which establish the toxic effects of the Defendant's product, at the very least establishes a question of fact as to the inadequacy of the warnings and the resultant defective condition of the Defendant's product.

In accordance with its earlier holding in this Memorandum regarding the adequacy of Defendant's warnings, the Court similarly disposes of any alleged defect resulting from an alleged inadequate warning as a matter of law.  Much of the consumer expectation test is a function of expectations created by warnings, and since the warnings on Clobber adequately apprised consumers of the inherent danger of using Clobber, the product does not defy the expectations of a reasonable consumer.  The issue of whether the consumer is a professional or non-professional is provided for in the phrase "the ordinary knowledge common to the community as to its characteristics," and ultimately irrelevant.  The community that

buys Clobber happens to consist of professionals, but the adequacy of the warnings does not turn on this fact in the present case.

Plaintiff's application of Ruggeri is likewise irrelevant. Defendant did not assert, like the defendant in Ruggeri, that Plaintiff assumed the risk by choosing the less safe of two available products. Rather, Defendant argued that Plaintiff ignored the instruction requiring use of a different product for the type of clog he was working on. This is not a question of consumer choice; it is a question of following directions.

Defendant's claim that risk-benefit analysis is inapplicable because Clobber is a "simple" product is unconvincing. The detailed use instructions and numerous dangers demonstrate that the product is not simple in the sense that the tampons in Haddix were simple. However, Plaintiff provides little or no evidence suggesting that sulfuric acid is too dangerous to be used in chemical drain cleaners, while Defendant provides sufficient evidence of the benefits of using sulfuric acid in chemical drain cleaners. The fact that the Consumer Product Safety Commission has found sulfuric acid drain cleaners safe for use is especially compelling. The Consumer Product Safety Commission is better equipped than this Court to decide whether the benefits of a component like sulfuric acid outweigh the inherent dangers of such a component.

Ultimately, the Plaintiff's design defect claims are simply another manifestation of his inadequate warning claims, and as such must fail. Accordingly, the Court grants summary judgment in favor of Defendant on Counts V, VI, VII, and VIII.

## IV. CONCLUSION

For the reasons set forth above, the Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: _November 3, 2004_